UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
GLENDA O. MILLER,                              :
                                               :
                          Plaintiff,           :
                                               :          **OPINION AND ORDER**
             -against-                         :          11-cv-4103 (DLI)
                                               :
MICHAEL J. ASTRUE,                             :
COMMISSIONER OF SOCIAL SECURITY,               :
                                               :
                          Defendant.           :
-------------------------------------------------------- x
**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff Glenda O. Miller ("Plaintiff") filed applications for supplemental security income and disability insurance benefits under the Social Security Act (the "Act") on June 17, 2009 alleging a disability that began on January 4, 2009. Plaintiff's application was denied, and, on reconsideration, Plaintiff appeared and testified at a hearing held before Administrative Law Judge Hazel C. Strauss ("ALJ") on January 6, 2011. By decision dated February 9, 2011, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. On June 24, 2011, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.

Plaintiff filed the instant appeal seeking judicial review of the denial of benefits, pursuant to 42 U.S.C. § 405(g). The Commissioner moved for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), seeking affirmation of the denial of benefits. Plaintiff cross-moved for judgment on the pleadings, seeking reversal of the Commissioner's decision and remand. Plaintiff contends that the ALJ: (i) improperly evaluated Plaintiff's residual functional capacity ("RFC"); (ii) failed to consider Plaintiff's obesity; (iii) did not apply Medical Vocational Rule 201.12; and (iv) improperly evaluated Plaintiff's credibility.

For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted, and the matter is remanded for further administrative proceedings consistent with this opinion.

## BACKGROUND

### A.     Non-medical and Testimonial Evidence

On January 6, 2011, Plaintiff, represented by counsel, appeared and testified at a hearing concerning her disability claim.  (R. 10-54.)[1]  Plaintiff, born in 1956, has a high school education.  (R. 16-17.)  She is five feet five inches tall and weighs approximately 350 pounds.  (R. 16.)  At the time of the hearing, Plaintiff lived alone in an apartment.  (R. 17.)

Plaintiff worked as a home health aide from 2000 to 2002.  (R. 32-35.)  In that position, Plaintiff helped take care of elderly people by bathing them, cleaning, cooking and running errands.  (R. 33.)  She lifted people who weighed over 100 pounds and, on a typical day, would sit for two hours and stand for six hours.  (R. 33-34.)  From 2003 to 2009, Plaintiff worked as food service worker at a developmental center run by the State of New York.  (R. 31-32.)  There, she served food, washed dishes and cleaned the dining rooms.  (R. 32.)  The job required her to stand, walk and lift 20 to 25 pounds regularly.  (*Id.*)  Plaintiff stopped working on January 4, 2009, but tried to resume her food service job in March 2009.  (R. 14, 112, 118, 124, 130.)  She left the job again on April 7, 2009 because of her physical impairments, as the job could not offer her any light duty positions.  (R. 130.)

Plaintiff testified that she suffers from a pinched nerve in her right foot that causes her pain when she puts weight on it.  (R. 18.)  Plaintiff also experiences pain and stiffness in her ankles.  (R. 18, 20, 27.)  Her feet swell during the day, particularly when she has to stand.  (R.

---

[1] "R." citations are to the correspondingly numbered pages in the certified administrative record. (*See* Dkt. Entry 16.)

27.)  She elevates her legs for about an hour every day to lessen the swelling.  (R. 27-28.)
Plaintiff takes Celebrex and Aleve, and soaks her feet in epsom salts twice per week to help with
the pain.  (R. 21.)  She also does exercises that she was told to do when she went through
rehabilitation.  (R. 21-22.)  Plaintiff also testified that she has an enlarged heart and high blood
pressure, but she takes medication that keeps her blood pressure under control.  (R. 22.)

Plaintiff can walk approximately one and a half blocks before she needs to stop because
of her ailments.  (R. 26.)  The pain in her feet and ankles also prevents her from being able to sit
or stand for long periods of time.  (R. 18.)  She can stand for 20 minutes before having to sit
down.  (R. 26-27.)  She can sit for an hour before having to stand and, when she stands up after
sitting, she feels stiff.  (R. 27.)  Plaintiff can lift approximately eight to ten pounds.  (*Id*.)

During a typical day, Plaintiff does some light cooking, cleaning, laundry and shopping.
(R. 23-24.)   Plaintiff also watches television, reads and visits friends and family.   (R. 24.)
Plaintiff can care for her personal needs.  (R. 25.)

**B.**     **Medical Evidence**

In February 2009, Plaintiff began treatment with a podiatrist, Dr. Michael Katz.  Plaintiff
reported pain between her toes on her right foot and was given an injection for the pain.  (R.
182.)  Dr. Katz found her pain consistent with Neuroma.  (*Id*.)  In follow up visits over the next
month, Plaintiff reported that the injections helped somewhat with the pain.  (R. 183.)  Dr. Katz
prescribed Ultram for the pain.  (*Id*.)

In April and May 2009, Plaintiff was treated by Dr. Yanina Etlis.  Plaintiff reported foot
pain and numbness, and said that she had shortness of breath and palpitations when she walked a
lot.  (R. 223-24.)  Dr. Etlis recommended that Plaintiff should be excused from work from April

29 through May 8, 2009 because of her ailments. (R. 178.) On May 21, 2009, Dr. Etlis diagnosed Plaintiff with osteoarthritis and GERD, and prescribed Prevacid. (R. 228.)

Plaintiff underwent an MRI of her right foot on June 1, 2009. The MRI showed minimal irregularity of her medial cuneiform bone, which might reflect old trauma or degenerative change. (R. 229.) There also were mild degenerative changes in her calcaneocuboid joint and her ankle. (*Id.*) Plaintiff also had degenerative changes on the top of her mid-foot, a prominent talar dorsal break and prominent plantar calcaneal enthesophytes. (*Id.*) On June 22, 2009, an MRI on Plaintiff's right ankle showed an extra bone with edema suggesting muscle motion. (R. 233.) The MRI also revealed marked atrophy of the abductor minimi compatible with end-stage denervation. (*Id.*) Another MRI on Plaintiff's right foot performed June 29, 2009 showed a soft tissue mass most likely reflecting Morton's neuroma. (R. 235.) There also was evidence of osteoarthritis. (*Id.*)

On July 14, 2009, Plaintiff reported to Dr. Etlis that she was experiencing foot and ankle pain of five on a ten-point scale that got worse when she walked. (R. 237.) Plaintiff also said that cortisone injections did not lessen the pain. (*Id.*) Dr. Etlis noted that Plaintiff's ankles were swollen, but that she had full flexion and extension in her ankles and feet. (R. 240-41.) Dr. Etlis diagnosed Plaintiff with right foot pain, Morton's neuroma, osteoarthritis and calcaneal spur, and recommended physical therapy. (R. 242.)

Plaintiff underwent a consultative examination by Dr. Justin Fernando, an orthopedic surgeon, on August 17, 2009. (R. 186-89.) Dr. Fernando observed that Plaintiff walked with a mild limp without an assistive device. (R. 187.) She could walk on her heels and toes, but claimed she was in pain when she did so. (*Id.*) Plaintiff had difficulty getting on and off the examination table, but was able to rise from her chair without difficulty. (*Id.*) Plaintiff had a full

range of motion in her hips, knees and ankles, with no joint inflammation or instability. (R. 188.) There was tenderness, however, in her right foot. (*Id*.) Dr. Fernando diagnosed Plaintiff with morbid obesity, "painful right foot (arthritis of the navicular-cuneiform joint," Morton's neuroma and hypertension. (*Id*.) He found that Plaintiff's prognosis was "poor" because she is likely to have progressive arthritic changes in her foot that is likely to be aggravated due to her weight. (*Id*.) He also explained that Plaintiff could have pain on prolonged standing and walking. (*Id*.) He called the success of any potential surgery to alleviate her pain "debatable" given her obesity. (*Id*.)

A September 1, 2009 physical therapy progress note revealed Plaintiff continued to have pain in her foot, but did not have swelling. (R. 245.) On September 17, 2009, Plaintiff reported less difficulty with standing and walking, but she experienced difficulty with prolonged walking and her right foot was tender. (R. 246.) Plaintiff stated that her pain was four to five on a ten-point scale. (*Id*.)

On October 28, 2009, podiatrist Dr. Yelena Ogneva treated Plaintiff for Morton's neuroma in her right foot, unstable degenerative joint disease in both feet and flat feet. (R. 220.) Dr. Ogneva wrote that Plaintiff should avoid prolonged standing and excessive lifting during work hours. (*Id*.)

From March through November 2010, Plaintiff was treated four times by Dr. Babu Joseph, who is certified in internal medicine. (R. 255-261.) Dr. Joseph diagnosed hypertension and obesity, and prescribed medication and diet. (R. 255, 260-61.) He also found trace pitting edema in her legs during the first two visits. (R. 257, 260.) On November 4, 2010, Dr. Joseph completed a multiple impairment questionnaire. (*See* R. 262-69.) Dr. Joseph listed diagnoses of obesity and hypertension, with a guarded prognosis. (R. 262.) He did not list any pain or loss of

sensation symptoms. (R. 263.) Dr. Joseph reported that Plaintiff could sit for eight hours and stand or walk for two hours in an eight-hour day, and could sit continuously. (R. 264.) He opined that Plaintiff could lift and carry up to 20 pounds frequently and 50 pounds occasionally. (R. 265.) Plaintiff did not have any limitations in doing repetitive reaching, handling, fingering or lifting. (*Id*.) Dr. Joseph also found that Plaintiff's symptoms would not increase in a competitive work environment, and that her pain and fatigue would not be severe enough to interfere with her attention and concentration. (R. 266-67.) He determined that Plaintiff was capable of moderate work stress. (R. 267.)

## C. **Vocational Expert's Testimony**

At Plaintiff's hearing, Victor Alberigi testified as a vocational expert ("VE"). (*See* R. 29.) The VE testified that Plaintiff's previous position as a home health care aide is classified as medium but was performed as heavy and was semi-skilled, though the skills were not transferrable. (R. 35-36, 38.) The VE also explained that Plaintiff's food worker job is listed as medium, but was performed as light, and was unskilled. (R. 36.)

The ALJ then said, "I see that in this case she has no transferrable skills and she couldn't do more than light work. So I'm prepared to issue a bench decision . . . . [I]f after I leave I might see something I didn't see here today and I might change my mind, but in case, I will be issuing a written decision." (R. 39-40.) The ALJ then started to read a decision apparently granting Plaintiff disability benefits, explaining that Plaintiff could do less than a full range of light work. (*See* R. 41-42.) The ALJ then said, "I have to change my mind" and called the VE again to see "if there are jobs that could work for this particular assessment. I was thinking she was older than the range." (R. 42-43.)

Over vigorous objections from Plaintiff's attorney, the ALJ re-called the VE. (R. 43-44.) The ALJ asked the VE to consider a hypothetical person who, like Plaintiff, is 54 years old, has a high school education, same past relevant work as Plaintiff, no limitation in using upper extremities for gross and fine manipulation, a need for the "usual" breaks, has to avoid sitting continuously, could lift 20 pounds frequently and 50 pounds occasionally, and could only stand and walk two hours in an eight-hour workday. (R. 44-45.) The VE testified that such a person could not perform Plaintiff's past relevant work and "would really need a sedentary job because . . . they're only able to stand and walk up to two hours a day." (R. 45-46.) The ALJ then asked whether, based on both the Dictionary of Occupational Titles ("DOT") definitions and the VE's experience, there were any light jobs where the person sits mostly at a table and only lifts 20 pounds. (R. 46.) The VE said that he had seen some jobs defined as light by the DOT that could be performed with Plaintiff's restrictions, because they are often performed as sedentary with a sit/stand option. (R. 46-48.) These jobs include a small product assembler, parking lot cashier and information clerk. (R. 47-48.) The VE acknowledged that his conclusion conflicted with the DOT definitions of the jobs he listed, because the DOT defined the jobs as requiring standing or walking 66 percent of the day. (R. 49-50.) He explained that the DOT is 19 years old and his experience with these positions is more recent. (*Id*.)

## DISCUSSION

### I. Standard of Review

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). A district court,

reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F. 3d 496, 504 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F. 2d 751, 755 (2d Cir. 1982). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F. 3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F. 3d 34, 39 (2d Cir. 1996)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F. 3d 770, 774 (2d Cir. 1999) (internal quotation marks omitted).

## II.    Disability Claims

To receive disability benefits, claimants must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). Claimants establish disability status by demonstrating an "inability

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F. 2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act as set forth in 20 C.F.R. §§ 404.1520 and 416.920. If at any step the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the ALJ considers whether the claimant has a "severe impairment," without reference to age, education or work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental ability to conduct basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's RFC in steps four and five. 20 C.F.R. §§ 404.1520(e), 416.920(e). In the fourth step, the claimant is not disabled if he or she is able to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g),

416.920(g).  At this fifth step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work.  *See Draegert v. Barnhart*, 311 F. 3d 468, 472 (2d Cir. 2002).

### III.     The ALJ's Decision

On February 9, 2011, the ALJ issued her decision denying Plaintiff's claim.  (*See* R. 59-72.)  The decision followed the five step analysis.  At the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (R. 61.)  At the second step, the ALJ concluded that Plaintiff suffered from the following severe impairments:  morbid obesity, early osteoarthritis of the right foot, Morton's neuroma of the right foot and calcaneal spur.  (*Id*.)  At the third step, the ALJ concluded that these impairments, in combination or individually, did not meet, or equal, a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1.  (R. 63.)

At step four, the ALJ found that Plaintiff had the RFC to perform a wide range of light work, but lacked the RFC to perform any past relevant work.  (R. 64, 69.)  Specifically, the ALJ found that Plaintiff could stand and walk two hours in an eight-hour day, must avoid prolonged sitting and have a sit/stand option, could lift 20 pounds frequently, had no limits in the use of the upper extremities for fine and gross manipulation and had no other significant exertional or nonexertional limitations.  (*Id*.)  In coming to this conclusion, the ALJ gave controlling weight to Plaintiff's internist, Dr. Joseph, and significant weight to her podiatrist, Dr. Katz, and the consulting examiner, Dr. Fernando.  (R. 68.)

At step five, the ALJ concluded, based on the VE's testimony, that there are jobs in significant numbers that Plaintiff can perform.  (R. 70-71.)  The ALJ noted that the VE's testimony that Plaintiff could perform certain light jobs was inconsistent with the DOT's

definition of those jobs, but found that the VE provided a reasonable explanation for the discrepancy. (R. 71.) As a result of the ALJ's application of the five steps, the ALJ found Plaintiff not disabled. (*Id*.)

## IV.  Analysis

### A.  *Plaintiff's RFC Assessment*

#### 1.  Plaintiff's Exertional Level

Plaintiff contends that, based on the limitations described by her treating physicians and the ALJ, Plaintiff's RFC should have been found to be sedentary, rather than light. (Pl.'s Mem. of Law in Supp. of Her Mot. for J. on the Pleadings, Dkt. Entry 14 ("Pl.'s Mem."), at 9-12.) Specifically, Plaintiff maintains that the medical evidence shows that Plaintiff could only stand/walk for two hours in an eight-hour day and had to avoid heavy lifting, which is inconsistent with light work. (*Id.* 11-12.) Plaintiff also asserts that the VE initially testified that Plaintiff could perform only sedentary jobs and the ALJ agreed, but that the ALJ then inappropriately influenced the VE to change his testimony to state that, contrary to the DOT definitions, there were certain light occupations Plaintiff could perform. (*Id.* 9-11.) The Commissioner counters that substantial evidence supports the ALJ's conclusion that Plaintiff could perform a wide range of light work. (Reply Mem. of Law in Supp. of Def.'s Mot. for J. on the Pleadings, Dkt. Entry 15 ("Comm'r's Reply"), at 2-4.) The Commissioner also asserts that the VE adequately explained any discrepancy between his testimony and the DOT definitions. (*Id.* 3.)

The ALJ found that Plaintiff could lift 20 pounds frequently, had no limitations in the use of the upper extremities and could sit eight hours, as long as Plaintiff had the option to stand

occasionally, but could only stand/walk for two hours in an eight-hour work day. (R. 64.) The regulations define light work as:

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b).

Plaintiff reads this definition as including jobs that require lifting no more than 20 pounds frequently, which Plaintiff can do, *and* require a good deal of walking, which Plaintiff cannot. However, the regulation is plainly disjunctive, as a job can be considered light work if it "requires a good deal of walking or standing, *or* when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* (emphasis added). Since Plaintiff can sit throughout the day, as long as she has the opportunity to stand occasionally, can lift 20 pounds frequently and has no restrictions manipulating with her arms, the regulations indicate that she can perform at least some light work, although not the full range of light work because she cannot walk or stand for long periods.

Plaintiff asserts that her RFC is in closer to sedentary than light, and directs the court to Social Security Ruling 83-12. (*See* Pl.'s Mem. 12.) The ruling provides:

> If the exertional level falls between two rules which direct opposite conclusions, i.e., "Not disabled" at the higher exertional level and "Disabled" at the lower exertional level, consider as follows:
> a.     An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."
> b.     On the other hand, if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of "Disabled."

SSR 83-12.

However, even assuming Plaintiff's standing and walking limitations put her in between, but closer to sedentary than light, "'SSR 83-12 does not mandate a finding of "disabled."' It does not require the ALJ to determine whether a claimant's occupational base is more closely related to light or sedentary work capacity." *Gravel v. Barnhart*, 360 F. Supp. 2d 442, 448 (N.D.N.Y. 2005) (quoting *Moore v. Apfel*, 216 F. 3d 864, 871 (9th Cir. 2000)). Following the language quoted above, Social Security Ruling 83-12 continues:

> c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, [Vocational Specialist] assistance is advisable for these types of cases.

In other words, "an ALJ can properly find a claimant capable of performing a limited range of work in a given exertional category and then elicit VE testimony to determine whether that claimant is disabled." *Gravel*, 360 F. Supp. 2d at 448; *see also Rosa*, 168 F. 3d at 77 (If a claimant cannot perform past relevant work, the Commissioner "then has the burden of proving that the claimant still retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."); *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 549 (S.D.N.Y. 2009) ("ALJ Reap's decision does not conflict with SSR 83-12 because he considered the testimony of a vocational expert in determining whether or not jobs existed for Plaintiff.").

Here, upon finding that Plaintiff's RFC suggested that she had some abilities consistent with light work (*e.g.*, lifting 20 pounds and manipulating controls with her upper body) and others inconsistent with light work (*e.g.*, inability to stand/walk for long periods), the ALJ did what Social Security Ruling 83-12 suggests. The ALJ called the VE as a witness and asked if there were any light jobs in significant numbers in the economy that someone with Plaintiff's

limitations could perform.  (*See* R. 45-48.)  The VE stated that he had observed jobs classified as light that do not require standing or walking for more than two hours in an eight-hour day, such as a small-product assembler.  (*See* R. 47.)  With this testimony, the ALJ had substantial evidence to find that there were light jobs Plaintiff could handle.  *See McDonaugh*, 672 F. Supp. 2d at 549 (VE testimony "constitutes substantial evidence that there are jobs available in significant numbers that Plaintiff is able to perform given her Residual Functional Capacity." (citing *Dumas v. Schweiker*, 712 F. 2d 1545, 1553 (2d Cir. 1983))).

Plaintiff also contends that the ALJ could not rely upon the VE's testimony because it conflicts with the DOT definitions of the jobs he said Plaintiff could perform.  (*See* Pl.'s Mem. 10.)  This argument is without merit.  Social Security Ruling 00-4p provides that "[o]ccupational evidence provided by a VE or VS [vocational expert or vocational specialist] generally should be consistent with the occupational information supplied by the DOT."  However, an inconsistency does not require the ALJ to reject the VE's testimony.  It only obligates the ALJ to "elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled."  SSR 00-4p; *see also Bathrick v. Astrue*, 2012 WL 1068985, at *5 (D. Conn. Mar. 29, 2012) (citing cases).  Here, the ALJ inquired into the inconsistency and the VE explained that his experience differed from the DOT's definitions because the DOT is 19 years old and the VE's experience is recent.  (*See* 46, 49-50.)  In her decision, the ALJ acknowledged the inconsistency and explained that she found the VE's explanation for the difference reasonable.  (R. 71.)  While the ALJ was not required to rely on the VE instead of the DOT, the ALJ was entitled to believe the VE over the DOT in light of the VE's reasoned explanation for the difference.

Plaintiff also contends that it was improper for the ALJ to reverse course when it appeared that she was about to find Plaintiff disabled, and steered the VE's testimony into finding that Plaintiff was capable of some light work. (Pl.'s Mem. 10.) While it may not be good practice for an ALJ to give a claimant false hope, the record does not indicate there was anything inappropriate about the ALJ's changed opinion. Contrary to Plaintiff's suggestion, the ALJ appears to have believed consistently that Plaintiff was able to perform some light work. (*See* R. 42 (Plaintiff "can do less than a full range of – less than a full range of light work, based on the record.").) Her initial indication that Plaintiff was disabled was based upon her mistaken understanding that Plaintiff was 55 years old or older, and, therefore, would have been considered disabled under Medical Vocational Rule 202.06, even if she could perform light work. (*See* R. 42-43 ("I have to ask [the VE] if there are jobs that could work for this particular assessment. I was thinking she was older than the range.").) Thus, the ALJ would not have had to ask the VE if there were any light jobs Plaintiff could perform if she was 55 years old or older because she would have been considered disabled. Once the ALJ realized that Plaintiff was actually 52 years old at the alleged onset date, the ALJ re-called the VE to determine whether there was any light work she could perform. This was appropriate because, as discussed further, *infra* § IV.D, under Medical Vocational Rule 202.13, a person under 55 years-old is not disabled, if she can perform light work. *See* 20 C.F.R. Part 404, Subpart P, App. 2.

Moreover, the record does not show that the ALJ inappropriately steered the VE into finding that Plaintiff could perform some light work. After initially stating that Plaintiff's restrictions made her suited only to sedentary jobs, the VE clarified that his initial statement was based upon the DOT, and that he disagreed with the DOT based upon his recent experiences. (R.

46.)  As discussed above, the ALJ was permitted to ask if the VE's opinion differed from the DOT and adopt the VE's opinion based upon his reasonable explanation.

Accordingly, the ALJ did not err in finding that Plaintiff had the RFC to perform some light work based upon the VE's testimony.

2.    Sit/Stand Frequency

Plaintiff also asserts that the ALJ's finding that Plaintiff retained the RFC to perform some light work was flawed because the ALJ failed to assess how frequently Plaintiff needs to alternate between sitting and standing.  (*See* Pl.'s Mem. 12-13.)  The Commissioner counters that the ALJ was justified in assuming that Plaintiff could sit or stand at will, and did not have to include any further details in the ALJ's assessment.  (*See* Comm'r's Reply 4-5.)

Social Security Ruling 96-9p provides:

An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically.  Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. . . . *The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing*.  It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

(emphasis added).

In describing Plaintiff's RFC to the VE, the ALJ stated that "the doctor said she shouldn't sit continuously.  So – or avoid continuous sitting – so allow her to change position if needed.  He doesn't say how often this should be."  (R. 45.)  In the written decision, the ALJ explained that Plaintiff's RFC required that she have "the option to sit-stand throughout the day."  (R. 64.)  Thus, while the ALJ did not specify in units of time how often Plaintiff would have to alternate between positions, in both her written decision and her hypothetical to VE, the ALJ indicated that Plaintiff would have to alternate as much as she wants.

No additional specificity is called for under Social Security Ruling 96-9p.  *See Evans v. Astrue*, 2012 WL 6204219, at \*8 (W.D.N.Y. Dec. 12, 2012) ("I find that the ALJ's residual functional capacity finding of 'sit or stand alternatively,' the ALJ's hypothetical question, and the testimony of the vocational expert were all consistent with an at-will sit/stand option, and accordingly, no greater specificity was required." (citation omitted));  *Sanchez v. Astrue*, 2008 WL 4344567, at \*7 (S.D.N.Y. Sept. 17, 2008) ("After determining that the plaintiff needed to alternate between sitting and standing, the ALJ ruled that Mr. Sanchez could perform 'a range of sedentary work with no more than occasional postural positions and the opportunity to alternate sit/stand positions at will.'  This description was sufficiently specific to satisfy the requirements of SSR 96-9p." (citation omitted)), *report & recommendation adopted by*, 2009 WL 874203 (S.D.N.Y. Mar. 30, 2009); *Magee v. Astrue*, 2008 WL 4186336, \*7 (N.D.N.Y. Sept. 9, 2008) ("Although the ALJ's RFC finding did not specifically state the frequency with which Plaintiff must alternate between sitting and standing in terms of hours, the ALJ did determine that Plaintiff must be able to alternate positions 'at will' – the most flexible of standards – in order to meet the exertional requirements of sedentary work.").  Additional specificity certainly would not have benefitted to Plaintiff here.  Plaintiff testified that she needs to move after sitting for an hour, less frequently than "throughout the day," which gives Plaintiff the broadest possible discretion to change position.

Accordingly, the ALJ's RFC description adequately specified Plaintiff's sit/stand requirement.

B.       *Consideration of Plaintiff's Obesity*

Plaintiff contends that the ALJ erred by not considering the effects of her obesity on her RFC, particularly because she has arthritis in weight bearing joints.  (Pl.'s Mem. 13-14.)  The

Commissioner responds that there is nothing in the record showing that Plaintiff's obesity caused any specific functional limitations and, in any event, the ALJ fully considered Plaintiff's obesity. (Comm'r's Reply 5-6.)

Social Security Ruling 02-1p directs ALJs to consider whether a claimant's obesity significantly limits his or her ability to do work activities, including whether it makes other ailments worse. The ruling provides: "[o]besity can cause limitation of function. . . . An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 02-1p(8). The ruling also teaches that:

> [t]he combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone. . . . As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.

*Id.*

Here, the ALJ's decision shows that Plaintiff's obesity was considered in determining her RFC. In the decision, the ALJ listed morbid obesity as one of Plaintiff's severe impairments. *See Talavera v. Comm'r of Soc. Sec.*, 2011 WL 3472801, at *12 (E.D.N.Y. Aug. 9, 2011) (The ALJ properly considered the plaintiff's obesity because, *inter alia*, she listed "'obesity' as one of [the plaintiff's] impairments, which she assumed to be severe."), *aff'd in separate opinions*, 697 F. 3d 145 and 2012 WL 4820808 (2nd Cir. 2012); *Cruz v. Barnhart*, 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006) (no error where "the ALJ made specific mention of [the plaintiff's] obesity in his findings of fact"). The ALJ stated specifically that she took into account Social

Security Ruling 02-1p and acknowledged that Plaintiff's obesity could have an adverse impact on other impairments.[2]  (R. 63.)

Moreover, the ALJ discussed the treating physicians' and consulting examiner's diagnoses, including their repeated diagnoses that Plaintiff was obese, and accorded them great weight.  (*See* R. 66-68.)  Plaintiff's treating physician, Dr. Joseph, specifically diagnosed her obesity as part of his assessment that Plaintiff had standing limitations.  (R. 262-64.)  The ALJ gave Dr. Joseph controlling weight and incorporated Dr. Joseph's opinion that Plaintiff could only stand for two hours in an eight-hour workday.  (R. 64, 67-68); *see also Drake v. Astrue*, 443 F. App'x 653, 657 (2d Cir. 2011) ("[T]he ALJ implicitly factored [the plaintiff's] obesity into his RFC determination by relying on medical reports that repeatedly noted [the plaintiff's] obesity and provided an overall assessment of her work-related limitations.").  Plaintiff emphasizes that the consulting examiner, Dr. Fernando, found that Plaintiff's foot arthritis, "given her weight, it is likely to be aggravated in the future," and prolonged standing and walking could cause her pain.  (Pl.'s Mem. 14; R. 188.)  However, the ALJ gave this opinion significant weight and used it as further support for her finding that Plaintiff's ability to stand and walk was considerably impaired.  (R. 68.)

Accordingly, the record reflects that the ALJ adequately considered Plaintiff's obesity, including how it exacerbated Plaintiff's arthritis.

---

[2] Plaintiff faults the ALJ's analysis because, in the decision, the ALJ notes that Plaintiff "had worked in the past with her morbid obesity."  (R. 68.)  The court agrees that this conclusion has little relevance to how Plaintiff's obesity aggravates the pain in her foot given the ALJ's finding that the pain prevents her from performing past relevant work.  However, it is somewhat relevant as to whether Plaintiff's obesity on its own is disabling.  In any event, as discussed above, the ALJ considered Plaintiff's obesity in more depth than this one statement, and her conclusion of the overall effect of Plaintiff's obesity is supported by the medical records.

C.      *Plaintiff's Credibility*

Plaintiff asserts that the ALJ erred in assessing Plaintiff's credibility by summarily concluding that Plaintiff's testimony was not credible to the extent it conflicted with her RFC determination.  (Pl.'s Mem. 15-17.)  The Commissioner responds that the ALJ considered the regulatory credibility factors and properly found that the medical evidence did not support the severity of Plaintiff's allegations.  (Comm'r's Reply 6-8.)

In determining Plaintiff's credibility, the ALJ must adhere to a two-step inquiry set forth by the regulations.  *See Peck v. Astrue*, 2010 WL 3125950, at *4 (E.D.N.Y. Aug. 6, 2010).  First, the ALJ must consider whether there is a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged.  20 C.F.R. § 404.1529(b); SSR 96-7p.  Second, if the ALJ finds that the individual suffers from a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged, then the ALJ is to evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which they limit the individual's ability to work.   20 C.F.R. § 404.1529(c)(1); SSR 96-7p.

Where the ALJ finds that the claimant's testimony is not consistent with the objective medical evidence, the ALJ is to evaluate the claimant's testimony in light of seven factors:  1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of the pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; 5) any treatment, other than medication, that the claimant has received; 6) any other measures that the claimant employs to relieve the pain; and 7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

"If the ALJ rejects plaintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, he must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 435-36 (S.D.N.Y. 2010); *see also* SSR 96-7p ("When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements."); *Tornatore v. Barnhart*, 2006 WL 3714649, at *6 (S.D.N.Y. Dec. 12, 2006) (similar). "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms." SSR 96-7p. Where the ALJ neglects to discuss her credibility determination with sufficient detail to permit the reviewing court to determine whether there are legitimate reasons for the ALJ's disbelief and whether her decision is supported by substantial evidence, remand is appropriate. *Correale-Englehart*, 687 F. Supp. 2d at 435-36; *see also Valet v. Astrue*, 2012 WL 194970, at *22 (E.D.N.Y. Jan. 23, 2012) (remanding because the ALJ failed to address all seven factors); *Grosse v. Comm'r of Soc. Sec.*, 2011 WL 128565, at *5 (E.D.N.Y. Jan. 14, 2011) (finding that the ALJ committed legal error by failing to apply factors two through seven).

In this instance, the ALJ failed to explain her credibility determination properly. Echoing the two-step process in 20 C.F.R. § 404.1529, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that Plaintiff's testimony about the intensity, persistence and limiting effects of the symptoms were "not credible to the extent they are inconsistent with the above residual functional capacity

assessment." (R. 67.) Such a conclusory statement, without any further explanation as to why the ALJ found Plaintiff's testimony not credible, does not provide any basis for this court to review whether there are legitimate reasons for the ALJ's disbelief. Stating that Plaintiff's testimony should not be believed to the extent it is inconsistent with the RFC adds little, because it simply declares the effect of finding Plaintiff not credible, not a valid reason why Plaintiff's statements are incredible. Plaintiff's statements, to the extent that they are found credible, are to be used in formulating the RFC in the first instance. Presumably, testimony found not credible will never be used in devising an RFC and, therefore, will always be inconsistent with the RFC assessment.

The ALJ also failed to explain which, if any, of the considerations listed 20 C.F.R. § 404.1529(c)(3)(i)-(vii) factored into her credibility determination. For some of the factors, such as Plaintiff's daily activities and medications, the decision reflects that the ALJ was generally aware of them, but there is no additional analysis as to how they impact Plaintiff's credibility. (*See* R. 64-65.)

Other regulatory factors were not discussed in any context. For example, Plaintiff testified that her feet swell and she elevates her legs every day for approximately one hour to ease the swelling. (R. 27-28.) Indeed, one of Plaintiff's treating physicians reported on at least one occasion that Plaintiff's ankles were swollen. (*See* R. 241.) The ALJ should have considered the swelling and what Plaintiff does to relieve the swelling as part of the credibility analysis. *See* 20 C.F.R. § 404.1529(c)(3)(vi) ("[W]e will consider . . . [a]ny measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)."). If properly considered and found credible, Plaintiff's reported swelling and her need to raise her leg could affect her ability to perform

certain light work. However, the ALJ did not mention these potential symptoms and limitations in the hypothetical she posed to the VE and the VE did not have an opportunity to discuss whether they would change his opinion.

Accordingly, the ALJ did not apply the law correctly in determining Plaintiff's credibility. On remand, the ALJ must consider the credibility of Plaintiff's reported symptoms by applying all seven factors listed in 20 C.F.R. § 404.1529(c)(3), and make specific findings as to how the factors affect the ALJ's credibility determination.

D.     *Medical Vocational Rule 201.12*

Plaintiff asserts that the court must issue a finding that Plaintiff is disabled because she was 52 years old when she filed her application and the ALJ should have found that Plaintiff has the ability only to perform sedentary work. (*See* Pl.'s Mem. 15.) More specifically, at 52 years old, Plaintiff was "closely approaching advanced age." 20 C.F.R. § 416.963(d). Pursuant to Medical Vocational Rule 201.12, a person who is closely approaching advanced age with a high school education and unskilled previous work experience should be found disabled if he or she can perform only sedentary work. 20 C.F.R. Part 404, Subpart P, App. 2.

As discussed above, the court cannot determine that Plaintiff is capable only of sedentary work in light of the medical evidence and the VE's testimony that there are light jobs where Plaintiff could sit, with a sit/stand option. However, the court notes that if the ALJ's reassessment of Plaintiff's credibility on remand changes this analysis and the ALJ finds that Plaintiff has the RFC for sedentary work only, Plaintiff will be considered disabled as of the date of her application. *See id*.

The court also notes that Plaintiff reached the age of 55 years old on December 2, 2011, after the hearing was held. A 55 year-old is statutorily considered to be of "advanced age." 20

C.F.R. § 416.963(e). A person who reaches advanced age, with Plaintiff's education and skills, is disabled under Medical Vocational Rule 202.06, even if he or she has the RFC to perform light work. 20 C.F.R. Part 404, Subpart P, App. 2. Thus, Plaintiff apparently became disabled on December 2, 2011, even if she could perform certain light work. The parties have not briefed how these changed circumstances should affect this court's review of the ALJ's decision, and the court declines to consider this issue *sua sponte*, particularly because the case is being remanded for other reasons. However, on remand, if the ALJ again finds that Plaintiff has the RFC for some light work, the ALJ should consider how Plaintiff reaching advanced age after her application was filed affects whether she is entitled to benefits under her instant application.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion is denied and Plaintiff's motion for judgment on the pleadings is granted. Accordingly, pursuant to the fourth sentence of 42 U.S.C. § 405(g), the Commissioner's decision is reversed and this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion. Specifically, on remand, the ALJ is to: (i) reassess Plaintiff's credibility and explain the weight given to Plaintiff's testimony in light of all of the regulatory factors; and (ii) consider how Plaintiff turning 55 years old since her application and hearing affects whether Plaintiff is entitled to benefits.

SO ORDERED.

Dated: Brooklyn, New York
        March 1, 2013

                    _____/s/_____
                         DORA L. IRIZARRY
                       United States District Judge